IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EDWARD F. SMITH, individually and as class
representative on behalf of all similarly situated persons,                PLAINTIFF

v.                              No. 2:11-cv-02113

AMERICAN BANKERS INSURANCE COMPANY
OF FLORIDA                                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff's Motion to Remand and supporting Memorandum of Law (Docs. 18-19), Defendant's Response in Opposition (Doc. 22), and Plaintiff's Reply (Doc. 26). Plaintiff disputes the existence of diversity jurisdiction in this case, as he contends that the total amount in controversy does not exceed the sum or value of $5,000,000, pursuant to the jurisdictional requirements described in the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332 (d). For the reasons reflected herein, Plaintiff's Motion to Remand (Doc. 18) is **GRANTED**, and this case is remanded to the Circuit Court of Crawford County, Arkansas.

**I. Background**

On May 6, 2011, Plaintiff Edward F. Smith filed a putative class action complaint in the Circuit Court of Crawford County, Arkansas, against Defendant American Bankers Insurance Company of Florida, alleging breach of contract due to Defendant's underpayment of claims for loss or damage to real property made pursuant to certain homeowners insurance policies. *See* Doc. 2, ¶¶ 1-4. Plaintiff's home was damaged by hail on or about April 9, 2008, and thereafter, Plaintiff requested payment from Defendant for this damage. Plaintiff alleges that under the homeowners policy of insurance issued by Defendant, Plaintiff and others similarly situated were entitled to be

fully reimbursed for such loss or damage but were not fully reimbursed. Specifically, Plaintiff asserts that Defendant failed to pay for charges reasonably associated with retaining the services of a general contractor to repair or replace damaged property. These charges, known as general contractors' overhead and profit ("GCOP"), comprise an extra 20% fee routinely assessed by contractors when repairing damaged property. *Id.* at ¶¶ 19-22. According to Plaintiff, Defendant fraudulently concealed its obligation to pay GCOP charges and forced Plaintiff to bear this cost and suffer the ensuing damage. *Id.* at ¶ 32. The purported class of persons injured by Defendant's alleged breach of contract for failure to pay GCOP on homeowners insurance contracts includes "hundreds, and possibly thousands, of individuals geographically dispersed across Arkansas. . ." *Id.* at ¶ 25.

Defendant removed this case to federal court on June 21, 2011, arguing that Plaintiff lacked the authority to place a limit on recovery that would bind the other class members. Defendant also asserted that the actual amount in controversy exceeded the $5 million jurisdictional limitation and that Plaintiff's signed stipulation limiting his and the purported class's recovery did not effectively cap damages and was therefore unenforceable. Further, Defendant argued that even though Plaintiff specifically disclaimed any entitlement to punitive damages and did not plead bad faith as a cause of action, because the facts as stated constituted claims for both punitive damages and bad faith, the Court should assume those claims were pled and include damages for those claims in calculating the amount in controversy. Defendant maintained that if the amount in controversy included claims for punitive damages and bad faith, this would certainly result in a total award in excess of the jurisdictional maximum allowed for state court.

On July 21, 2011, Plaintiff moved to remand the case back to state court, citing in support

of the motion his binding stipulation executed prior to removal, which expressly limited his and the class's recovery to within state jurisdictional limits. Plaintiff also asserted that as master of his Complaint, he had the right to limit his claims so as to bring this action in the forum of his choice. *See* Doc. 19, pp. 5-6.

## II.  Legal Standard

When analyzing the propriety of removal of a case to federal court, the removing party has the burden of showing that jurisdiction in the federal courts is proper and the requisite amount in controversy has been met. *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969). Federal courts must strictly construe the federal removal statute and resolve any ambiguities about federal jurisdiction in favor of remand. *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

CAFA operates to grant federal district courts original jurisdiction over class actions where there is diversity of citizenship between the plaintiff and defendant and when "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332 (d)(2). The claims of the potential class members must be aggregated to determine whether the jurisdictional minimum has been met. 28 U.S.C. § 1332 (d)(6). The guiding principle courts follow in establishing whether or not removal is proper is that the plaintiff is the master of his complaint, even in class action cases. *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). Therefore, in determining the amount in controversy, a court looks first to the complaint. "If [a plaintiff] does not desire to try his case in the federal court, he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id*. at 289. Although Plaintiff in the instant case does not claim to be owed a specific dollar amount in damages, he does impose a limitation on the amount he and the purported class may recover. In his Complaint, Plaintiff states that "neither Plaintiff's nor any individual Class Member's claim is equal to or greater than seventy-five thousand dollars ($75,000), inclusive of costs and attorneys fees, individually or on behalf of any Class Member. . . Moreover, the total aggregate damages of the Plaintiff and all Class Members, inclusive of costs and attorneys' fees, are less than five million dollars ($5,000,000), and the Plaintiff and Class stipulate they will seek to recover total aggregate damages of less than five million dollars ($5,000,000)." Doc. 2, ¶11.

Attached to the Complaint is a "Sworn and Binding Stipulation," signed by Plaintiff, affirming that he will not at any time during the pendency of the case "seek damages for myself or any other individual class member in excess of $75,000 (inclusive of costs and attorneys' fees) or seek damages for the class as alleged in the complaint to which this stipulation is attached in excess of $5,000,000 in the aggregate (inclusive of costs and attorneys' fees)." *Id.* at p. 15.

To defeat remand, a defendant has the burden of showing by a preponderance of the evidence that the amount in controversy exceeds the federal court's minimum threshold for jurisdiction, which is $5 million in the aggregate. *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003). The Court must engage in a "fact intensive" inquiry to determine whether the preponderance of the evidence standard has been met. *Bell*, 557 F.3d at 959. Mere speculation or conjecture on the part of the defendant as to the amount in controversy will not be sufficient to meet the preponderance standard. *See, e.g.*, *Thomas v. Southern Pioneer Life Ins. Co.*, 2009 WL 4894695, *2 (E.D. Ark. Dec. 11, 2009); *Nowak v. Innovative Aftermarket Sys.*, 2007 WL 2454118 (E.D. Mo.

Aug. 23, 2007).

Once the preponderance standard is met and the defendant establishes enough detail to meet the jurisdictional requirement for the amount in controversy, the court turns its attention to the plaintiff, who must establish "to a legal certainty" that his claim is actually under the $5 million threshold. *Bell*, 557 F.3d at 956 (*citing St. Paul Mercury*, 303 U.S. at 290). Any doubt as to federal jurisdiction must be resolved in favor of remand. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010).

### III. Discussion

#### A. Defendant's Legal Burden: Preponderance of the Evidence

Defendant proposes that Plaintiff's Complaint presents an actual amount in controversy of over $5 million (*see* Doc. 1, p. 10). However, Defendant can only arrive at that figure by adding into the Complaint claims not specifically pled by Plaintiff, and indeed claims specifically disclaimed by Plaintiff. Defendant concedes that the Complaint, as pled, places $2,013,677 in compensatory damages in controversy, plus a 12% statutory penalty of $241,641, for a total award of $2,255,318. This is well below the $5 million threshold allowable for federal court jurisdiction. Even if the Court were to add a presumed attorneys' fee award of 40% of the total recovery to the total above, the award would be $3,157,445. But Defendant argues in itsNotice of Removal that according to the allegations Plaintiff sets forth in the Complaint, "Arkansas law also affords a claim for common law bad faith" in the case at bar. Doc. 1, p. 8. Defendant reasons that if the law affords a claim for bad faith and the accompanying possibility of an award of punitive damages for bad faith, this Court should include those potential claims in the damages calculus and boost the purported amount in controversy accordingly.

Plaintiff, however, has expressly stated in his Complaint that he "specifically disclaims any actual or potential entitlement to punitive damages" on behalf of himself or the class members. Doc. 2, ¶ 11. Moreover, Plaintiff is "asserting no cause of action that would support a punitive damage award." *Id.* It is the Court's view that only claims actually put into controversy by Plaintiff shall be included in calculating the amount in controversy for jurisdictional purposes.

As the master of his complaint, a plaintiff can choose what claims to bring or what claims to leave out. "[A] removing defendant can't make the plaintiff's claim for him; as master of the case, the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). *See also Holcombe v. Smithkline Beecham Corp.,* 272 F.Supp.2d 792, 793 (E.D. Wis. 2003) ("The fact that a plaintiff seeks to represent a class does not make the plaintiff any less the master of [his] own complaint. Like other plaintiffs, class action plaintiffs should be able to make strategic decisions concerning how to plead a case").

In the instant case, Plaintiff has gone beyond simply leaving out claims and has expressly disclaimed any award of punitive damages and refused to plead any cause of action that would support an award of punitive damage, which includes a claim for bad faith. Defendant has not cited any case law which would persuade the Court that a plaintiff who expressly disclaims seeking punitive damages would nonetheless be forced to seek them in an Arkansas court. Therefore, the Court cannot and does not find that an Arkansas court would force a plaintiff to seek punitive damages in a case where the plaintiff has expressly disclaimed any desire or intention to do so. To hold otherwise would be illogical and would take any force out of the axiom that a plaintiff is the master of his complaint. *Cf. Quebe v. Ford Motor Co.*, 908 F.Supp. 446, 453 (W.D. Tex. 1995)

("... Defendants request that this Court 'force' the Plaintiffs to amend their complaint and include a request for punitive damages... Defendants fail to cite any case law that actually supports this novel proposition").

Defendant also cites to Ark. R. Civ. P. 54(c), which provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Again, the omission of a claim must, logically, be considered differently than the express renouncement of a claim. Here, Plaintiff acknowledges that he may be entitled to punitive damages, but nonetheless makes the conscious choice not to bring that claim. This is a far cry from a plaintiff who inadvertently, or for whatever reason, simply omits a claim for punitive damages or a cause of action that affords punitive damages in the first place. Therefore the Court cannot and will not consider punitive damages or a claim for bad faith as part of the amount in controversy. Absent inclusion of these claims, Defendant has failed to show by a preponderance of the evidence that the amount in controversy is greater than $5 million. Indeed, by Defendant's own admission, the amount in controversy described by the face of Plaintiff's Complaint falls well short of the $5 million jurisdictional minimum required for removal to federal court.

### B. Plaintiff's Legal Burden: Legal Certainty

Even if Defendant had met its burden of proof and demonstrated that more than $5 million were in controversy, remand is proper in the case at bar because Plaintiff proved to a legal certainty that his claim is for less than the requisite amount required for federal court jurisdiction. Plaintiff met his burden of proof by stipulating at the time the Complaint was filed that he would not seek more than the federal jurisdictional minimum for himself and the putative class. Even though the

7

Eighth Circuit in the case of *Bell v. Hershey Co.*, 557 F.3d 953 (8th Cir. 2009), did not specifically reference the plaintiff's legal certainty burden, it did conclude that a clear stipulation would meet the requirements for defeating removal. It follows, therefore, that if a stipulation is legally binding and made in good faith, it can satisfy the plaintiff's legal burden and defeat removal. *Id.* at 956; *see also Tuberville v. New Balance Athletic Shoe, Inc.*, 2011 WL 1527716, *3 (W.D. Ark., April 21, 2011).

### 1. Plaintiff's Stipulation

The law in this circuit is clear that a binding stipulation sworn by a plaintiff in a purported class action will bar removal from state court if the stipulation limits damages to the state jurisdictional minimum. *Bell*, 557 F.3d at 958, *citing De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995) ("In order to ensure that any attempt to remove would have been unsuccessful, [plaintiff] Bell could have included a binding stipulation with his petition stating that he would not seek damages greater than the jurisdictional minimum upon remand"). Various federal courts in Arkansas, including this one, have remanded several purported class actions to state court using the guideline set forth in *Bell* regarding the effect of a plaintiff's binding stipulation. *See, e.g., Thompson v. Apple, Inc.*, 2011 WL 2671312 (W.D. Ark. July 8, 2011); *Tomlinson v. Skechers U.S.A., Inc.*, Case No. 5:11-CV-05042-JLH (W.D. Ark. May 25, 2011); *Murphy v. Reebok Int'l, Ltd.*, 2011 WL 1559234 (E.D. Ark. April 22, 2011); *Tuberville v. New Balance Athletic Shoe, Inc.*, 2011 WL 1527716 (W.D. Ark. April 21, 2011).

Defendant contends that the wording of the stipulation attached to the instant Complaint telegraphs Plaintiff's desire to circumvent CAFA and receive an award in excess of the $5 million threshold. Plaintiff's sworn stipulation states that he "will not. . . seek" damages in excess of $5 million in the aggregate. Doc. 2, p. 15. According to Defendant, this language does not adequately

bind Plaintiff because he has not "refused to accept" a damage award in excess of the maximum. Defendant fears that Plaintiff's choice of the word "seek" is intentionally made in order to leave open the door for a larger award than the maximum allowed in state court. Defendant cites no authority to support its view that Plaintiff's promise not to "seek" an award over jurisdictional limits is unenforceable, but "refusing to accept" such an award would be binding. Magic words are not required in order to make a sworn stipulation binding. Accordingly, the Court finds Plaintiff's sworn stipulation is sufficient and meets the standard suggested by the Eighth Circuit in *Bell* to effectively bar removal.

The overarching argument Defendant submits is that the Court should completely disregard Plaintiff's self-imposed limitations in his Complaint and attached stipulation, and instead calculate the amount in controversy based on the possibility that after remand, the state court could award Plaintiff more than he seeks or consider a cause of action that Plaintiff has not pled. Defendant also worries that perhaps Plaintiff could amend his Complaint in the future to increase the amount of recovery sought. Speculation as to a state court's future acts or Plaintiff's future acts cannot vest this Court with jurisdiction where it otherwise has none at the time of removal. If a court could base its jurisdiction solely upon the possibility of a future award by a court or a future amendment by a plaintiff, any case filed in state court would be susceptible to removal no matter how the plaintiff stated his claims.

Arkansas law permits Plaintiff to plead his damages specifically. Rule 8(a) of the Arkansas Rules of Civil Procedure provides that:

> [i]n claims for unliquidated damage, a demand containing no specified amount of money shall limit recovery to an amount less than required for federal court jurisdiction in diversity of citizenship cases,

9

>unless language of the demand indicates that the recovery sought is in excess of such amount.

Despite the clear language of this provision, the Supreme Court of Arkansas held in *Interstate Oil & Supply Co. v. Troutman Oil Co.*, that Rule 8(a) must be read in conjunction with Rule 15(b), "which provides that, when issues *not raised by the pleadings* are tried *by the express or implied consent of the parties*, they shall be treated in all respects as if they had been raised in the pleadings." 334 Ark. 1, 5 (1998)(emphasis added). The Arkansas Supreme Court then concluded that a plaintiff whose complaint contained a demand for unspecified unliquidated damages could recover more than the federal jurisdictional amount. *Id*. at 5-6.

Since *Troutman*, however, the Arkansas legislature has amended the state's procedural law in, what seems to the Court, to be an effort to mend the gap identified by the Arkansas Supreme Court in *Troutman*. In March of 2011, the Arkansas legislature amended the Arkansas Code, adding A.C.A. § 16-63-221, which states as follows:

>(a) A plaintiff who files a complaint in circuit or district court praying for an award of damages may, but is not required to, state an amount in controversy for the purposes of establishing subject-matter jurisdiction and determining if the amount sought is within the jurisdictional limits of the court.
>
>(b) A declaration allowed by subsection (a) of this section is *binding on the plaintiff with respect to the amount in controversy* unless the plaintiff subsequently amends the complaint to pray for damages in an amount that exceeds the jurisdictional limits of the court, at which time the amendment is governed by the Arkansas Rules of Civil Procedure.

(emphasis added).

A fair reading of A.C.A. § 16-63-221 reveals that although complaints may be subject to

10

amendment under Rule 15, plaintiffs are nonetheless bound to the statements in their complaints *unless* an amendment is made. This new law adds important context to the interplay between Ark. R. Civ. P. 8(a) and 15. The fact that a plaintiff may later amend his complaint to raise the amount in controversy does not change the fact that he is bound to his originally stated amount *unless* he chooses to amend. Further, the Court disagrees with Defendant that this statute does not apply to class actions: such a limitation cannot be assumed by the plain language of the statute. Rather, the Court finds that the statute merely reinforces the intent of the Eighth Circuit in the *Bell* case, making clear that a binding stipulation made by a plaintiff places an upper limit on the amount in controversy for purposes of subject matter jurisdiction analysis.

If Plaintiff were to amend his Complaint after remand, disclaiming his sworn stipulation and seeking instead an amount in excess of the jurisdictional maximum, it follows that Defendant would have the right to remove again, should removal be justified. It is no longer the rule that CAFA cases must be removed within a year. Now they may be removed at any time, assuming they are removable. 28 U.S.C. § 1453 (b); s*ee e.g. Bartnikowski v. NVR Inc.*, 307 Fed. Appx 730, 739 (4th Cir. 2009) ("a CAFA defendant who cannot meet his burden for removal at the early stages of litigation may still have recourse to the federal courts later, as Congress has eliminated the one-year time limit on CAFA removal actions"); *Lowdermilk v. U.S. Bank Nat'l Assoc.,* 479 F.3d 994, 1002-03 (9th Cir. 2007) ("CAFA mitigates some of the potential for abuse [by plaintiffs] by eliminating the one-year removal limitation").

Moreover, if in the future it is evident that Plaintiff has moved to amend his Complaint post-remand solely to thwart federal and state procedural rules and the ruling of the district court, such an attempt would obviously be in bad faith and, under Arkansas law, could be either stricken under

Rule 15 or prohibited under the doctrine of judicial estoppel. Under Ark. R. Civ. P. 15(a), a plaintiff may amend her pleadings at any time without leave of court. However, upon motion by an opposing party, a court may strike any amended pleading where the court determines that prejudice would result because of the filing of the amendment. Ark. R. Civ. P. 15(a). Furthermore, judicial estoppel may apply when a party assumes a position clearly inconsistent with a position taken in the *same case*. *Dupwe v. Wallace*, 355 Ark. 521, 525 (Ark. 2004); *see also Tuberville*, 2011 WL 1527716 at *4*, and *Thompson*, 2011 WL 2671312 at *3 ("[w]hile the Court believes that this stipulation alone is sufficient to limit damages, the Plaintiffs would also be judicially estopped from asserting a claim in state court for punitive damages or in any other way attempting to recover more than the amount contemplated in the stipulations"). Here, there is enough evidence to conclude, as a matter of law, that Plaintiff would be prohibited from recovering in excess of the amount alleged in Arkansas courts barring any subsequent, good-faith amendment of the Complaint.

### 2. Due Process Concerns for the Class

Defendant maintains Plaintiff has exhibited bad faith in seeking to limit the as-yet-unknown class members to a cap in damages. As the master of his complaint, Plaintiff may choose what claims to bring and what claims to leave out. Defendant cites to the case of *Bass v. Carmax Auto Superstores, Inc.*, 2008 WL 441962 (W.D. Mo., Feb. 14, 2008), for the proposition that a class plaintiff has no right to limit recovery for a class without court approval. However, the *Bass* case was decided before *Bell*, and the holding in *Bass* contradicts both the plain language and the spirit of the Eighth Circuit's holding in *Bell*. Furthermore, putative class members may simply opt out of the class and pursue their own remedies if they feel that the limitations placed on the class by Plaintiff are too restrictive. *See Murphy,* 2011 WL 1559234 at *3 (". . . the plaintiffs in state court

who choose not to opt out of the class must live with it," *quoting Morgan v. Gay*, 471 F.3d 469, 477-78 (3rd Cir. 2006), *cert. denied*, 128 S. Ct. 66 (2007)).

### III. Conclusion

The Court finds that Defendants have not shown by a preponderance of the evidence that Plaintiff has put more than $5,000,000 in the aggregate in controversy. Additionally and alternatively, the Court finds that Plaintiff has shown to a legal certainty that the aggregate damages claimed on behalf of the putative class shall in good faith not exceed the state court's jurisdictional limitation of $5,000,000. Accordingly, Plaintiff's Motion to Remand (Doc. 18) is hereby **GRANTED**. This case shall be remanded forthwith to the Circuit Court of Crawford County, Arkansas.

**IT IS SO ORDERED** this 7th day of December, 2011.

/s/ P. K. Holmes, III
P.K. HOLMES, III
UNITED STATES DISTRICT JUDGE